## A99A1344. DRIVER v. THE STATE.
(523 SE2d 919)

MILLER, Judge.

After witnessing Melanie Driver speed, run a red light, and weave out of her lane, an officer pulled her over and observed her watery, bloodshot eyes, smelled an odor of alcohol coming from her car, heard her slur her speech and admit to drinking a couple of beers, and watched her respond sluggishly to requests. She performed poorly on three field sobriety tests and tested positive on the

---

[8] *Osborne v. Hughes*, 200 Ga. App. 558, 559 (409 SE2d 58) (1991).

[9] Id.

breath alco-sensor. After arresting her for DUI, the officer searched her purse for inventory purposes and discovered a green, leafy substance in a plastic baggie, which Driver conceded at trial was marijuana. A jury found her guilty of running a red light,[1] possessing marijuana,[2] and driving under the influence of alcohol to the extent that it was less safe for her to drive.[3] Driver appeals, contending among other things that the evidence did not suffice to sustain the convictions. Because the evidence was more than sufficient, we affirm.

1. Driver argues that the State failed to establish a scientific foundation regarding the reliability of three police lab tests (Duquenois-Levine, fast blue V, and microscopic) performed on the marijuana. Claiming the court should have excluded the lab results, she contends that nothing else supported a finding of guilt on her alleged possession of marijuana and that therefore her motion for directed verdict should have been granted.

In testimony elicited by her own counsel, Driver admitted three times that the substance found in her purse was marijuana. This testimony moots her appellate arguments challenging the State's evidence that the substance was marijuana. Where a defendant at trial admits to the essential elements of a crime, alleged defects in the State's evidence on that crime become irrelevant.[4] Because we consider all evidence introduced at trial, such admissions, even if made after the State has concluded its case-in-chief, preclude any error in denying a defendant's motion for directed verdict based on evidentiary grounds.[5]

2. Driver claims error in the court's denial of her motions that were based on the State's failure before trial to provide allegedly exculpatory material found in a police report. Specifically, she argues that the officer's notes that she recited the entire alphabet (though with slurred speech), that she told the officer she had weak ankles before failing the one-leg stand test, and that she touched the tip of her nose one out of the four times requested were exculpatory material wrongfully withheld from her until mid-way through the officer's

---

[1] OCGA § 40-6-20 (a).

[2] OCGA § 16-13-30 (a).

[3] OCGA § 40-6-391 (a) (1).

[4] See *Thorp v. State of Ga.*, 217 Ga. App. 275, 276 (1) (457 SE2d 234) (1995) (admission in appellate brief that amount of cocaine was 7.1 grams moots challenge to the State's evidence on the amount and weight of cocaine); cf. *Jackson v. State*, 208 Ga. App. 391, 392 (1) (430 SE2d 781) (1993) ("[o]bviously, if defendant admits that she possessed cocaine at any time within the period alleged, she would be guilty of the crime").

[5] See *Bowen v. State*, 235 Ga. App. 900 (510 SE2d 873) (1999) (" '[i]n reviewing the denial of a motion for a directed verdict made at the close of the State's case, an appellate court considers not only the evidence produced in the State's case-in-chief, but also any evidence introduced subsequent to the motion by the defense' ").

direct testimony, despite her pre-trial *Brady*[6] motion.

Because a *Brady* motion calls for the production of exculpatory evidence known to the prosecution but unknown to the defense, it "does not reach the defendant's own statements made prior to trial, as they are known to the defense."[7] Similarly, Driver, who was the subject of the sobriety tests, knew all along how she performed on the tests and so testified at trial.[8] In preparing her defense, she could have recited her performance to her counsel or to an expert for evaluation. No *Brady* violation occurred.

Moreover, even if she had been unaware of the allegedly exculpatory information in the police report, no *Brady* violation occurred where the information became available to her at trial.[9] "*Brady* does not require *pre-trial* disclosure of the materials."[10] Because Driver cross-examined the officer extensively about the police report information, she cannot show that the delayed disclosure deprived her of a fair trial.[11]

3. Driver challenges the trial court's allowing the officer to give a professional opinion that Driver was under the influence of alcohol to the extent that she was less safe to drive. Driver urges that the officer's opinion testimony addressed the ultimate issue and thus invaded the jury's province. Setting aside whether Driver waived this issue by not objecting when the officer first gave this opinion, we hold that a court in its discretion may allow a trained and experienced officer, such as the officer here, to render such an opinion based on the officer's personal observations of the defendant.[12]

4. Driver argues that the court erred in allowing the State to introduce her two prior DUI convictions. She claims that the State did not make the three affirmative showings required by *Williams v. State*[13] to introduce similar transactions. This argument is without merit.

The first affirmative showing is that the State seeks to introduce

---

[6] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[7] (Citation omitted.) *McCarty v. State*, 249 Ga. 618, 620 (292 SE2d 700) (1982); see *Cunningham v. State*, 248 Ga. 558, 561 (6) (284 SE2d 390) (1981).

[8] See *Sanders v. State*, 199 Ga. App. 671, 674 (5) (405 SE2d 727) (1991) (for *Brady* purposes, a defendant is deemed to know of tests that he was the subject of).

[9] See *Burgeson v. State*, 267 Ga. 102, 104 (2) (475 SE2d 580) (1996); *Leary v. State*, 260 Ga. 730, 731 (4) (399 SE2d 63) (1991); *Evans v. State*, 233 Ga. App. 879, 880 (2) (506 SE2d 169) (1998).

[10] (Citation and punctuation omitted; emphasis in original.) *Castell v. State*, 250 Ga. 776, 781 (2) (b) (301 SE2d 234) (1983).

[11] Id.; see *Ahmed Al-Beti v. State*, 210 Ga. App. 312, 313 (3) (436 SE2d 50) (1993).

[12] *Waits v. State*, 232 Ga. App. 357, 358 (1) (501 SE2d 870) (1998); see *Brent v. State*, 270 Ga. 160, 162-163 (3) (510 SE2d 14) (1998); *Lewis v. State*, 214 Ga. App. 830, 832 (1) (449 SE2d 535) (1994); *Fisher v. State*, 177 Ga. App. 465 (1) (339 SE2d 744) (1986); see generally OCGA §§ 24-9-65; 24-9-67.

[13] 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

the similar transactions for an appropriate purpose.[14] Here the prosecution stated that it sought to show bent of mind and course of conduct, which are appropriate purposes for introducing prior DUI convictions in a pending DUI charge.[15]

The second affirmative showing is that the accused committed the prior DUI.[16] Here the prosecution had an officer testify as to the circumstances of each prior DUI conviction and confirm that Driver was the defendant in both cases.

The third affirmative showing is that there is sufficient similarity between the prior DUIs and the current charge.[17] Here the prosecution cited to *Kirkland v. State*,[18] which held that in a pending DUI charge a prior DUI conviction is "essentially committed under the same factual circumstances" as the DUI offense at issue, regardless of any slight variance of facts such as the type of vehicle driven or the degree or source of intoxication. Subsequent cases have confirmed that regardless of the circumstances surrounding its commission, a prior DUI offense is logically connected to a pending DUI charge, for the prior charge is relevant to establish that the perpetrator has the bent of mind to drive after consuming alcohol.[19]

Here the prosecution showed additional similarities between the prior and pending DUI charges, in that in each Driver was driving the same Toyota truck in the late night or early morning hours.[20] The court did not abuse its discretion in finding the State made the *Williams* showings and in admitting the prior transactions.[21]

5. Driver complains that the court erred in charging the jury that police may search a driver arrested for DUI for both drugs and alcohol which could be the basis for the driver's intoxication. She does not claim that the charge was an inaccurate statement of law, but that the charge did not fit the facts of the case. She points to the officer's testimony that the only search was of Driver's purse, which

---

[14] Id.

[15] See *Smith v. State*, 236 Ga. App. 548, 552 (3) (512 SE2d 19) (1999); *Nameth v. State*, 234 Ga. App. 20 (1) (505 SE2d 778) (1998); *Tam v. State*, 232 Ga. App. 15 (1) (501 SE2d 51) (1998); *Kirkland v. State*, 206 Ga. App. 27, 28 (3) (424 SE2d 638) (1992).

[16] *Williams*, supra, 261 Ga. at 642 (2) (b).

[17] Id.

[18] Supra, 206 Ga. App. at 28 (3).

[19] See *Smith*, supra, 236 Ga. App. at 552 (3); *Lucas v. State*, 234 Ga. App. 534, 536 (2) (507 SE2d 253) (1998); *Nameth*, supra, 234 Ga. App. at 20-21 (1); *Tam*, supra, 232 Ga. App. at 16 (1); *Druitt v. State*, 225 Ga. App. 150, 152 (1), (3) (483 SE2d 117) (1997). This holding moots Driver's argument that the court erroneously charged the jury in the language of these cases.

[20] See *Harper v. State*, 213 Ga. App. 564, 565 (445 SE2d 563) (1994) (driving same vehicle in both prior and pending DUI charges may show similarity); *Guinn v. State*, 224 Ga. App. 881, 882 (1) (a) (482 SE2d 480) (1997) (prior and pending DUI offenses may be similar in that all offenses occurred in the late night or early morning hours).

[21] See *Smith*, supra, 236 Ga. App. at 552 (3) (abuse of discretion standard).

search was for inventory purposes and which resulted in the discovery of the marijuana. Because this alleged error pertains to Driver's possession of marijuana, it was mooted by her voluntary admissions at trial that her purse contained marijuana.

Moreover, the charge was not reversible error. Police may search an arrestee and items in her possession for inventory purposes[22] or for the purpose of discovering evidence of the charged crime.[23] Because either would have been acceptable here, the jury charge referencing the "discovering evidence" purpose but not the inventory purpose was, if anything, favorable to Driver. The jury was left with the impression that police could search only to discover evidence of the charged crime, not that the police could search for inventory purposes as was the purpose police testified to here. Thus, the error was harmless as to Driver.

6. Driver's last two enumerations of error concern the sufficiency of the evidence and the denial of her motion for new trial. Regarding the DUI and running a red light convictions, the officer testified that she saw Driver run a red light and that, based on the officer's observations and the sobriety tests, Driver was under the influence of alcohol to the extent that she was less safe to drive. Regarding the possession of marijuana conviction, Driver testified that she knew her purse contained marijuana. The evidence sufficed to sustain the convictions.[24] As Driver has failed to demonstrate any reversible errors in the conduct of the trial, the court did not abuse its discretion in denying her motion for new trial.[25]

*Judgment affirmed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 22, 1999 — 

*Wallace C. Clayton, Amelia G. Pray*, for appellant.

*David McDade, District Attorney, William J. Atkins, Assistant District Attorney*, for appellee.

---

[22] The officer testified this was a common practice and policy of her police department.

[23] *Sprinkles v. State*, 227 Ga. App. 112, 113 (1) (488 SE2d 492) (1997); see OCGA § 17-5-1 (a) (4); *Bagwell v. State*, 214 Ga. App. 15, 16 (446 SE2d 739) (1994).

[24] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[25] See generally *Mills v. State*, 188 Ga. 616, 622-623 (4 SE2d 453) (1939) (trial court may grant or deny new trial in its discretion; appellate court can only review whether law was followed).